IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HOLLY FRITZ

        Plaintiff,

v.

LOWER NAZARETH TARGET,
d/b/a TARGET and/or TARGET
CORPORATION, d/b/a TARGET
and/or JORDAN BARSKI

        Defendants.

3:14-CV-1726
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 33) by Magistrate Judge Carlson, in which the Magistrate Judge recommends granting the "Motion for Summary Judgment of Defendants, Lower Nazareth Target, d/b/a Target and/or Target Corporation, d/b/a Target and/or Jordan Barski" (Doc. 26) in the above-captioned action. Plaintiff Holly Fritz timely filed Objections pursuant to M.D. Pa. Local Rule 72.3. (Doc. 34). For the reasons that follow, upon *de novo* review of the R&R, the Court will adopt the pending R&R.

### II. ANALYSIS

A district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the court. 28 U.S.C.

§ 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report & Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); Local Rule of the Middle District of Pennsylvania 72.3.

In the present case, the Court referred Defendants' Motion for Summary Judgment to Magistrate Judge Carlson on January 20, 2017. The Magistrate Judge thereafter issued an R&R (Doc. 33) recommending that the motion be granted on the basis that there is insufficient record evidence upon which a trier of fact could conclude that defendants had constructive notice of a dangerous condition which caused Plaintiff's fall.

Plaintiff objects to the Magistrate Judge's recommendation, arguing that the plaintiff's deposition testimony, when looked at in conjunction with the deposition of Jerry Betters (a former employee of Target) and Samantha Borden (the Corporate Designee of Defendants), demonstrates that a genuine issue of material fact exists. (Doc. 34-1, at 11-13).[1]

---

[1] Plaintiff characterizes the relevant portions of Betters' and Borden's deposition testimony as follows:

> Mr. Betters testified that Target is a "store with thousands and thousands of products and people would drop a bottle of shampoo on the floor and leave it. That you would clean it up. So, you know, yes, you have thousands of people going through the building in a day. It wasn't uncommon for once in a while you had to pick something up that somebody would leave." See Deposition of Jerry Betters, former employee of Target, p. 40, lines 1-11.
> Mr. Betters further testified that he observed the liquid, although in the form of droplets, was concentrated in an area approximately twelve (12) inches round. See Deposition of Jerry Betters, former employee of Target, p. 61, lines 21-25.
> In addition to the testimony of Mr. Betters, Plaintiffs deposed the Corporate Designee of Defendants, Samantha Borden. During her deposition, Ms. Borden testified that despite the size of the Target store, Defendant does not employ someone whose primary

2

Specifically, Plaintiff argues that based on the record evidence, "a reasonabl[e] jury could legitimately conclude that Defendant knew or had reason to know, from past experience, that there was a likelihood of conduct on the part of third persons in general, namely other customers, which was likely to endanger the safety of their customers. . . ." (*Id.* at 11). Plaintiff does not dispute the Magistrate Judge's finding that "[t]he parties agree that this case turns on the issue of constructive notice. . . ." (Doc. 33, at 6 n.1), and this Court will therefore only evaluate the Defendants' motion premised on a theory of constructive notice.[2]

In support of her Objections, Plaintiff relies only on the Eastern District of Pennsylvania's decision in *Kania v. Sbarro*, 1998 WL 800320 (E.D. Pa. 1998). (Doc. 34-1, at 13-15). In *Kania*, the plaintiff slipped on a piece of lettuce while walking near a food buffet. The Court denied Defendant's motion for summary judgment, finding that:

> one could reasonably infer that defendant knew of the likelihood food would be dropped on its floor from evidence that its manager was required to inspect the floor for spills every five to ten minutes. One could reasonably infer that the floor was not so inspected from Mrs. Kania's testimony that she saw no Sbarro employees in the buffet area for five to ten minutes before the

---

responsibility it is to perform routine checks for hazardous conditions in the store. See Deposition of Corporate Designee, Samantha Borden, at p. 44, lines 2-12.
Ms. Borden further testified that Target knew on the date of the incident that they experienced spills on their floors of the store. See Deposition of Corporate Designee, Samantha Borden, at 76, lines 10-18.
(Doc. 34-1, at 12-13).

[2] The Court notes that Plaintiff's Objections also contain no objection to the Magistrate Judge's conclusion that defendants should not be precluded from arguing that they lacked constructive notice as a sanction for admittedly losing Plaintiff's injury report (Doc. 33, at 19-20 n.3). Plaintiff further does not object to the Magistrate Judge's finding that the statement of Plaintiff's father-in-law to an insurance adjuster regarding her fall is insufficient to create a genuine issue of fact. (*Id.*). The Court agrees with the Magistrate Judge on both of these points and, in light of Plaintiff's lack of objection, adopts these findings without further discussion.

3

> accident and Mr. Caballero's admission that the restaurant was shorthanded on the day of the accident. See Fed. R. Evid. 801(d)(2)(D). One could also reasonably infer from Mrs. Kania's testimony that the lettuce was slightly brown in color that it had been on the floor for a sufficient period of time that defendant reasonably should have discovered it. See David v. Pueblo Supermarket of St. Thomas, 740 F.2d 230, 236 (3d Cir.1984).
>
> Also, if the opinion of plaintiffs' expert is credited, one could reasonably find that defendant itself created a dangerous condition by utilizing a slippery surface without matting for a floor onto which it was reasonably foreseeable food particles and other slippery substances would fall.

Kania, 1998 WL 800320 at *2.

Despite Plaintiff's attempt to analogize Kania to the instant case, this comparison is inapposite. In Kania, the Court's decision was based, in large part, on three pieces of evidence for which there is no parallel here: (1) Plaintiff had observed the area where she slipped "for five to ten minutes before the accident"; (2) the fact that the lettuce was slightly brown could lead to a reasonable inference that it had been on the floor for a sufficient period of time;[3] and (3) Plaintiff's expert's opinion that the defendant had created a dangerous condition by not having mats on the floor.

In the instant case, Plaintiff does not assert that she had observed the aisle where she fell for any length of time (see generally, Dep. of Fritz), merely that she was walking down an unidentified aisle when her "foot hit whatever it was on the floor" (id. at 30). In fact, Plaintiff could not even state how long she had been in the store prior to her fall. (See id. at

---

[3] In determining the importance of the discoloration of the lettuce, it appears the Court was relying on an assumption that the buffet only contained fresh, green lettuce and consequently any lettuce would not have started to become brown until it fell on the floor. The Court therefore considered the color of the lettuce as evidence of duration.

4

27). Nor has Plaintiff produced any other direct evidence, such as an eyewitness affidavit or deposition stating that he or she had observed the liquid at any time prior to Plaintiff's fall or had been present in that aisle at any time prior to the fall, to suggest how long the liquid was on the floor. The only testimony with respect to the state of the aisle prior to Plaintiff's fall came from Betters, who responded in the negative when asked whether anyone at Target had seen the liquid on the floor before the fall. (*See* Dep. of Betters, at 19). Unlike in *Kania*, where both the Plaintiff's and restaurant general manager's depositions provided evidence that the floor had not been inspected for at least five to ten minutes, Plaintiff is unable to establish any such time frame here, through her own deposition or any other record evidence.

Next, although Plaintiff testified that there were "dust", "tracks" and "dirt" in the pool of liquid, as the Magistrate Judge properly pointed out, and which Plaintiff fails to address in her Objections, the presence of these things is often not enough, by itself, to demonstrate the length of time that liquid has been on the floor. (Doc. 33, at 13-17). Unlike lettuce, where its browning may be indicative of it being off a buffet for a certain amount of time, when conducting fact-specific inquiries, courts have consistently found that dirt, dust, and track marks <u>in cases similar to Fritz's</u>, without more, are insufficient to establish the presence of liquid on a floor for any particular amount of time. (*See id.* (collecting cases)).[4]

---

[4] *See also, Craig v. Franklin Mills Assoc., L.P.*, 555 F.Supp.2d 547, 554 (E.D. Pa. 2008) (where Plaintiff's evidence only showed that "a liquid substance" was spilled in a central area of the mall, and Plaintiff could not provide any evidence of the duration of time that the spill existed, the Court, collecting

5

Thus, even crediting Plaintiff's testimony with respect to the appearance of the liquid, she has failed to adduce sufficient evidence to demonstrate a dispute of fact as to the length of time that the liquid was on the floor, thereby forcing any trier of fact to engage in mere speculation or conjecture if asked to decide this issue.

Third, the plaintiff in *Kania* also provided an expert opinion that "defendant itself created a dangerous condition by utilizing a slippery surface without matting for a floor onto which it was reasonably foreseeable food particles and other slippery substances would fall." *Kania*, 1998 WL 800320, at *2. Here, Plaintiff has provided no expert testimony to show how long it would take for dust and/or dirt to accumulate in a pool of liquid or to show that the tile floors constituted a "slippery" or otherwise unsafe surface.[5]

For the foregoing reasons, Plaintiff's reliance on *Kania* is without merit and the Court will overrule Plaintiff's Objections on this point.

Finally, Plaintiff also argues that Defendants should be held liable because a "trier of fact can infer, not guess, that Defendant had knowledge of the thousands of customers that came through their building a day, handling thousands upon thousands of products displayed for purchase [and] they were aware of the spills that occur, and more importantly, were aware of this on the day of Ms. Fritz's fall." (Doc. 34-1, at 16). A review of Plaintiff's

---

cases, granted summary judgment to Defendants finding that "[c]laims supported by such scant evidence have been dismissed in overwhelming numbers at the summary judgment stage.").

[5] The Court is not implying that absent expert testimony, a plaintiff would not be able to prevail in certain slip and fall actions, only that an expert opinion is one way in which a plaintiff may be able to rebut an assertion that there is no issue of material fact as to whether a defendant had constructive notice of a dangerous condition.

6

Objections suggest that this statement is based on Plaintiff's prior references to the testimony of Betters and Borden. (*See id.* at 12-13). However, the testimony of these individuals does not help Plaintiff in the way she asserts. This testimony, as well as common sense, could lead a reasonable person to conclude that Target stores, including the one at issue here, have numerous customers on a daily basis, that spills occur, and that Target's employees are aware of both of these facts. However, Plaintiff's objections appear to assert that, when taking these facts into consideration, because Target "does not employ someone whose primary responsibility [ ] is to perform routine checks for hazardous conditions in the store" and that "Defendant could not produce documentation as to when the last time the area where the [spill] was that caused Plaintiff's injuries was checked" (*id.*), a dispute of fact exists as to Defendants' negligence.

Preliminarily, it is unclear whether Plaintiff is advancing this theory under Restatement (Second) of Torts § 343 or § 344. Under § 343, for the reasons discussed herein, *supra*, as well as those in the Magistrate Judge's R&R, Plaintiff's action still must fail. Plaintiff's afore-mentioned argument conflates the evidence, or lack thereof, of Defendants' inspection and clean-up practices with evidence of the duration of the spill. Defendants' alleged failure to have adequate practices in place as well as the lack of evidence as to when the aisle where Plaintiff fell was last checked says nothing about whether the liquid was on the floor for minutes or hours and is immaterial to a determination of the actual length of time that the spill was on the floor. There is no evidence that

Defendants knew, or should have known, about the spill. This is particularly relevant since a defendant cannot be held liable under § 343 for failing to identify and remove liquid when only a short time has passed between its presence on the floor and a person's fall due to the liquid. Here, regardless of Defendants' practices, Plaintiff has produced no direct or circumstantial evidence to demonstrate the presence of liquid in the aisle for any period of time that would allow a jury to make a determination as to Defendants' notice of the spill without engaging in mere conjecture.

In the alternative, although unclear, Plaintiff's argument may be an attempt to assert a cause of action premised on the Restatement (Second) of Torts § 344. However, prior to filing her Objections, Plaintiff never referenced this Section of the Restatement or specifically asserted a claim pursuant to this Section. Instead, Plaintiff's brief in opposition to summary judgment only references the Restatement (Second) of Torts § 343 (*see* Doc. 27, at 13) and Plaintiff only once cites to § 344 for the first time in her Objections, and only when discussing *Kania*, not her own case (*see* Doc. 34-1, at 14). Thus, because neither Plaintiff nor the Defendants previously raised the applicability of § 344, the R&R does not directly address this section of the Restatement. Despite Plaintiff's last minute passing reference to this Section, her failure to ever substantively raise it or attempt to apply it to the present case consists of a waiver of any argument premised on § 344.[6]

---

[6] The plaintiff's reference to § 344 when discussing *Kania* cannot be read as an invocation of § 344 to form the basis of a claim for her under that Section. Although *Kania* mentioned § 344, that Court did not expressly apply the principles of § 344 or rely on those principles in analyzing Kania's claim and denying Defendant's motion for summary judgment.

8

Nonetheless, even assuming that Plaintiff has properly asserted a claim premised on § 344 in addition to § 343, her claim must fail.

Pursuant to § 344, to impose liability on a possessor of land for physical harm caused by the accidental, negligent, or intentionally harmful acts of a third person, the possessor must fail to exercise reasonable care to "(a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Restatement (Second) of Torts § 344 (1965). Additionally,

> this duty does not arise until the landowner "knows or has reason to [know] that the acts of the third person are occurring, or are about to occur or unless he may know, or have reason to know, from past experience that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor. . . ."

*Midgette v. Wal-Mart Stores, Inc.*, 317 F.Supp.2d 550, 562 (E.D. Pa. 2004) (quoting *Moran v. Valley Forge Drive-In Theater, Inc.*, 246 A.2d 875, 878 (Pa. 1968))(internal brackets omitted). A landowner must therefore have actual or constructive knowledge of prior acts committed by third persons within the premises which may cause injuries to the invitee. *Moran,* 246 A.2d at 878-879. Section 344 of the Restatement of Torts thus imposes liability when a possessor:

> Know[s] or ha[s] reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though [the possessor] has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either

9

> generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.
>
> Restatement (Second) of Torts § 344, cmt. f.
>
> Sections 343 and 344 differ in several key respects:
>
> Section 343 imposes a duty on any possessor of land. However, Section 344 specifically imposes a duty on the possessor of land who holds his premises out for businesses purposes. *Read v. Sam's Club*, 2005 U.S. Dist. LEXIS 37579, 2005 WL 2346112 (E.D. Pa. Sept. 23, 2005). Section 343 requires the possessor of land to warn or protect against dangerous conditions regardless of how they occurred. *Id.* However, Section 344 isolates the business person's liability to those acts *committed by third parties.* Under Section 343, a defendant need only have knowledge of the likelihood of a harmful condition caused by a third party, as compared to knowledge of the actual harmful condition imposed by 344. *Id.* Thus, under Section 344, when properly presented, some reoccurring conditions caused by third parties may constitute notice to the possessor of land. *Id.; see also* Restatement (Second) of Torts § 344 cmt. f. Finally, although 344 places a broader duty upon the defendant to protect and warn against conditions caused by third parties, it also requires the plaintiff to make a specific showing that the dangerous condition was actually caused by a third party. *Id.*

*Joseph v. Speedy Gas, Inc.*, 2011 WL 6181205, *5 (D.V.I. 2011) (emphasis in original); *see also, Donovan v. Strawbridge & Clothier*, 1994 WL 1251144 (Pa. Com. Pl. 1994).

Here, under § 344, the deposition testimony of Betters and Borden could reasonably be understood as a statement that the defendants knew that spills caused by third parties may occur in the store. However, Plaintiff fails to demonstrate a material dispute of fact as to whether the spill at issue here was caused by a third party.

Pursuant to § 344, a plaintiff, to survive summary judgment, must produce evidence showing a triable issue of fact as to whether the dangerous condition was caused by a third

party. In the instant case, Plaintiff was unable to identify the liquid in any concrete way, at best, stating that "it was a clear liquid" (see Dep. of Fritz, at 32, 33, 35). Plaintiff also admitted that she did not know how the liquid came to be on the floor and stated that she did not see any empty containers in the area of her fall.[7] (Dep. of Fritz, at 32, 35). Plaintiff sets forth no testimonial or documentary evidence to create an issue of fact as to how the liquid ended up on the floor, i.e. the origin of the spill including any identifiable person or group of persons who caused the unknown liquid to be on the floor. A jury would thus be forced to engage in mere speculation in order to determine the cause of the spill. Plaintiff has offered no evidence to establish, or even place at issue, the source of the liquid or that the liquid on the floor was the result of a third party's accidental, negligent, or intentionally harmful acts. As a result, Plaintiff has failed to establish a key requirement necessary to asserting a claim pursuant to § 344.

For the foregoing reasons, even if § 344 did form part of the basis for Plaintiff's Complaint, she has failed to demonstrate a dispute of material fact as to at least one key element of a § 344 claim. Therefore, Defendants' motion for summary judgment will be granted.

---

[7] Betters also stated that he did not know how the liquid came to be on the floor (see Dep. of Betters, at 11) and there is no record evidence to suggest the source of the liquid or how it came to be in the aisle at issue.

## III. CONCLUSION

For the foregoing reasons as well as those set forth in Magistrate Judge Carlson's Report and Recommendation, the Court will adopt the Magistrate Judge's Report and Recommendation and grant the "Motion for Summary Judgment of Defendants, Lower Nazareth Target, d/b/a Target and/or Target Corporation, d/b/a Target and/or Jordan Barski" (Doc. 26).

_____
Robert D. Mariani
United States District Judge